**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JACKOSVILLE DIVISION**

**CHARLES IBEH**                              Case Number:  3:20-CV-1184

The Plaintiff,

vs.

WEST WILSON, JAMES TAUTEM,

RONALD NOVAK, STANLEY BARAN,

MCDONNELL JOANNE, MR. DANIEL, Mr.

West Wilson, WEISS MITCHEL, PONHARA

PO, and SECRETARY, DEPARTMENT OF

THE NAVY, Richard V. Spencer,

The Defendants

**AMENDED COMPLAINT AGAINST THE US NAVY**

The Plaintiff, Charles Ibeh through Judge files this amended Verified Complaint and Demand for Jury Trial

against Defendant the US Navy Richard V. Spencer based on the following grounds: The Plaintiff hereby

amends his Complaint to add claims and facts of discrimination (refusing to accept his foreign passport in

1

**Case Number:  3:20-CV-1184**

a timely manner and request for reasonable accommodation), harassment, retaliation for protected activity (prior to EEO activity, opposition to discrimination, and), compensatory, punitive damages, re-instatement. The Plaintiff's evidential documents proving his prior to EEO activity, opposition to discrimination, many are included in his Complaints to prove his reprisal/retaliation claims.

## NATURE OF THE ACTION

1. This an action seeking Damages and Equitable Relief pursuant to 29 C.F.R. Section 1614.405(employment discrimination), harassment and retaliation pursuant to the Florida Civil Right Act of 1992 ("FCRA"), Fla. Stat. $ 760.01 through & 760.11, and interference with Plaintiff 's right pursuant to reasonable accommodation and submission of foreign passport.

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction pursuant 28 U.S Code Section 1331 and diversity jurisdiction pursuant to 28 U.S Code Section 1331 and diversity jurisdiction pursuant to 28 U.S. Code Section 1331. The Plaintiff has exhausted all his administrative remedies and has received his right to file a civil dated July 21, 2020(copy attached as Exhibit A). Venue is proper in the Court because Plaintiff lives in Jacksonville, Florida and because Defendant has a presence in Jacksonville.

## PARTIES

3. Ibeh is a-47-year-old male, who was continuously employed as Electrical Engineer GS-09, Step 01, by the Defendant from February of 2015 until April 17, 2015. Ibeh's date of birth is April 23, 1973.

4. The Defendants are West Wilson, James Tatuem, Ronald Novak, Stanley Baran, McDonnell, West Wilson, Mr. Daniel, Mr. Weiss Mitchel, Ponhara Po, and Secretary, Department of the Navy, Richard V. Spencer.

2



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Charles I. Ibeh, a/k/a
Kristopher M.,[1]
Complainant,

v.

Richard V. Spencer,
Secretary,
Department of the Navy,
Agency.

Request No. 2020002496

Appeal No. 2019000258

Agency No. DON156588601559

<u>DECISION ON REQUEST FOR RECONSIDERATION</u>

Complainant timely requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in EEOC Appeal No. 2019000258 (January 7, 2020). EEOC regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. <u>See</u> 29 C.F.R. § 1614.405(c).

During the period at issue, GS-0855-09 at the Agency's Fleet Readiness Center Southeast, Naval Air Station in Jacksonville, Florida. On June 22, 2015, Complainant filed an EEO complaint alleging that the Agency subjected him to harassment based on his race, national origin, disability, genetic information, age, and reprisal which let to his termination on April 17, 2015. The prior appellate decision affirmed the Agency's final decision finding no discrimination.

In his request for reconsideration, Complainant contends that we erred in finding no discrimination and makes arguments which should have been raised on appeal. We emphasize that a request for reconsideration is not a second appeal to the Commission. <u>See</u> EEO MD 110 Ch. 9 § VII.A.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

Exh A

2                                          2020002496

Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 2019000258 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

<u>COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION</u> (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

<u>RIGHT TO REQUEST COUNSEL</u> (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


July 21, 2020
Date

**Case Number: 3:20-CV-1184**

## INTRODUCTION

The Plaintiff was hired by the Defendant in 2014. The Plaintiff attended new employee orientation on 09 February 2015.  He started that he felt harassed when after a week of being employed, by his first line supervisor, Mr. West Wilson. The Plaintiff Mr. Wilson and fellow employees made a mockery of him for unknown reason. He mentioned that Mr. Wilson seen him as a different person in the midst of other employees. He stated that other races in the avionics department worked as a team. The Plaintiff stated that he felt that the Security Officer, Mr. Ronald Novak, his assistant (Security Specialist), Mr. James Tatuem, Code 4.5 Competency Branch Manager, Mr. Stan Baran and Mr. Wilson harassed him. The Plaintiff stated that Mr. Baran, Mr. Wilson, Mr. Novak, Mr. Tatuem failed to work with him. The Plaintiff stated that he was let go on April 17, 2015 for opposing the Defendant's discrimination.

## STATEMENT OF FACTS

1.  The Plaintiff was born in Nigeria in 1973. He relocated to the United States in 2005 as an immigrant.

2.  The Plaintiff became naturalized citizens of the United States in 2012.

3.  On February 09,2015, the Plaintiff was hired by the Defendant as an Electrical Engineer, GS-09, Step-01

4.  On or after February 11, 2015, Mr. West Wilson asked the Plaintiff about his age and marital status. the Plaintiff made Mr. Wilson aware that he single and 42,

5.  On or After February 17, 2015, the Plaintiff had no computer in his office.  Mr. Daniel is his co-workers. He used his computer at work.

6.  On or After February 17, 2015, Mr. Wilson advised Mr. Daniel to let the Plaintiff use his (Daniel) computer to fill security clearance application.

3

Case Number: 3:20-CV-1184

7. On or After February 17, 2015. Mr. Wilson advised Mr. Daniel to assist the Plaintiff in filling out the application.

8. The Plaintiff disclosed his disability information on clearance application. Mr. Daniel advised the Plaintiff to delete his medical information on the Clearance application, but the Plaintiff did not.

9. On February 23, 2015, the Plaintiff submitted his security clearance application to the Security without deleting his medical information.

10. The Plaintiff did not sign his clearance application before it was submitted to the Security.

11. On February 24, 2015, the Plaintiff did his fingerprint by Mr. Tatuem, Assistant Security Manager. Mr. Tatuem requested his foreign passport.

12. Then he made Mr. Tatuem aware that he left his foreign passport at home.

13. On February 24, 2015, Mr. Tatuem orally made the Plaintiff aware that turning in his foreign passport to the Security is a requirement to keep his job. Mr. Tatuem orally made the Plaintiff aware that turning in his foreign passport to the Security is a requirement to obtain interim clearance.

14. On February 24, 2015, the Plaintiff's late father lived in Nigeria and he contacted his late father by his phone and the Plaintiff made his late father aware that he needs to turn in his passport to the Security to keep his job.

15. On February 24, 2015, the Plaintiff's late father advised the Plaintiff to turn in his foreign passport to the Security since Nigeria practices dual citizenship, that he would be able to get another foreign passport when done with the US Navy.

16. On February 24, 2015, the Plaintiff contacted his African Friend who works for the US Navy. The Plaintiff asked his African Friend whether he turned his foreign passport to the US Navy.

17. His friend told the Plaintiff that he turned in his foreign passport to the Security to keep his job in the US Navy.

4

### Case Number: 3:20-CV-1184

18. On February 24, 2015, the Plaintiff and Mr. Tatuem reached an agreement that the Plaintiff would provide his foreign passport to the next day (February 25, 2015). On February 24, 2015, the Plaintiff made Mr. West Wilson aware about his disability.

19. On February 24, 2015, the Plaintiff disclosed his medical condition to Mr. Wilson, and he made Mr. Wilson aware that he needs reasonable accommodation to do his job.

20. On February 24, 2015, Mr. Wilson made the Plaintiff aware that the Defendant does not accommodate people with disability, and the Plaintiff confronted Mr. Wilson after he that the Defendant does not accommodate people with disability.

21. On February 24, 2015, the Plaintiff left Mr. Wilson's office with no accommodation letter.

22. On February 25, 2015 is the first day the Plaintiff brought his foreigner passport to the Defendant's Security.

23. On February 25, 2015, the Plaintiff brought his foreign passport to the Security. The Defendant's Security manager Mr. Ronald Novak made the Plaintiff aware that people with disability are not allowed to work in the US Navy.

24. On February 25, 2015, the Defendant's Security manager Mr. Ronald Novak made the Plaintiff aware that people with disability are not allowed to obtain security clearance in the US Navy.

25. On February 25, 2015, the Defendant's assistant Security Manager, Mr. Tautem made the Plaintiff aware that people with disability are not allowed to obtain security clearance.

26. On February 25, 2015, the Defendant's Security rejected the Plaintiff's passport, and this date was the first day his passport was rejected.

27. On February 25, 2015, the Plaintiff provided his medical /Rehabilitation letter to the Security that Mr. Novak advised Mr. Tatuem to make a photocopy of the Plaintiff's medical document.

5

**Case Number: 3:20-CV-1184**

28. On February 25, 2015, Mr. Tatuem made copies of the Plaintiff's medical /Rehabilitation letter, and he returned the original medical document to the Plaintiff.

29. On February 25, 2015, the Plaintiff confronted Mr. Novak after his passport was rejected due to his disability. On February 25, 2015, the Plaintiff confronted Mr. Tatuem after his passport was rejected due to his disability.

30. On February 25, 2015, the Plaintiff made Mr. Tatuem and Mr. Ronald Novak that he would file an EEO and lawsuit against the Defendant if they refused to accept my passport due to my disability.

31. On February 25, 2015, the Plaintiff made the defendant's Security secretary Ms. Francine Juhlin aware that he would file a lawsuit against the Defendant if his disability would be used against him by the Security.

32. On February 25, 2015, from the Security's office, the Plaintiff complained to Mr. Wilson by text about the Security using his disability against him, and Mr. Wilson replied the Plaintiff's text. He made the Plaintiff aware that he does not fully understand his text.

33. On February 25, 2015, Mr. Wilson contacted the Security based on the text he received from the Plaintiff.

34. On February 25, 2015, Mr. Novak and Mr. Tatuem made the Plaintiff aware that it was written on the Defendant's job application requirement in 2014 that people with disability would be disqualified for his job offer.

35. On February 25, 2015, Mr. Novak and Mr. Tatuem made the Plaintiff aware that they were quite sure that the Defendant's HR Specialist Ms. McDonnell Joanne must have told him during his job interview that people disabilities are not qualified for the position.

36. On February 25, 2015, the Plaintiff informed Ms. Joanne that he was told by the Security that people with disabilities are not qualified for his employment position.

6

Case Number:  3:20-CV-1184

37. On February 25, 2015, the Plaintiff informed Ms. Joanne that he was told by the Security that it was written on the Job application that he applied in 2014 for his hired position that people with disabilities are not qualified.

38. On February 25, 2015, the Plaintiff informed Ms. Joanne that he was told by the Security that it was written on the Job application (that he applied in 2014 for his hired position) that people with disabilities are not qualified.

39. On February 25, 2015, the Plaintiff informed Ms. Joanne that Mr. Novak and Mr. Tatuem said that he was quite sure that she told him during the interview process that people with disability are not qualified for his position.

40. On February 25, 2015, the Plaintiff confronted Ms. Joanne for her inability to make him aware during the interview period that people with disability are not qualified for the position.

41. On February 25, 2015, Ms. Joanne made the Plaintiff aware that she has nothing to do with security clearance.

42. On February 25, 2015, Ms. Joanne warned and cautioned the Plaintiff never call her phone again regarding his passport issue with the security.

43. On February 25, 2015, the Security advised the Plaintiff to go back home with his foreign passport, but he refused.  On February 25, 2015, the Security contacted Mr. Wilson after the Plaintiff refused to leave the Security with his passport.

44. On February 25, 2015, the Plaintiff made the Security that his passport must be accepted before he would agree to go home.

45. Then a brief meeting in the Security regarding the Plaintiff's passport issue with the Defendant.

46. And the Plaintiff, Mr. Novak, Mr. Tatuem, and Mr. Wilson (by phone) participated in the minutes.

## Case Number: 3:20-CV-1184

47. During this meeting, the Plaintiff made it clear that the Defendant has not right to reject his passport due to his disability.

48. During this meeting, Mr. Novak, Mr. Tatuem and Mr. Wilson advised the Plaintiff to go back to work with his passport.

49. The plaintiff advised to   put down in writing that people with disability are not allowed to work in the US Navy and that is the reason his foreign passport was passport rejected due to his disability.

50. On February 25, 2015, the Plaintiff confronted the Security after they said that they would not put in writing that people with disabilities are not allowed to work in the US Navy.

51. On February 25, 2015, the Plaintiff made the Security aware that he would not leave the Security till his passport was accepted.

52. On February 25, 2015, the Security wrote a minute and stated that the Plaintiff refused to turn in his passport as needed by the Security.

53. This minute contains incorrect information on agreement of the Plaintiff's passport between them and the Security.

54. Therefore, the Plaintiff confronted the Security to say in the letter that his passport was rejected due to his disability.

55. On February 25, 2015, the Security refused to put in writing that his passport was being rejected due to his disability.

56. The Plaintiff rejected the Security's minutes.

57. The Plaintiff did not sign the Security's minutes because it contains false information.

58. On February 25, 2015, the Plaintiff made the aware that he would only sign when they state that people with disabilities are not allowed to work in the US Navy, and that is the reason his passport is rejected.

8

Case Number: 3:20-CV-1184

59. Then Mr. Tatuem advised the Plaintiff to write his minutes and sign by himself, but he refused to write the minutes.

60. On February 25, 2015, the Plaintiff refused to sign the Defendant's false minutes written by Mr. Tatuem.

61.  The false minutes was only signed by the Defendant.

62. After that, the Security harassed the Plaintiff in the Security building. He was bullied and forced to leave the Security premise.

63. On February 25, 2015, the Plaintiff was a tenant of Ms. Laura and she was/is    Defendant's HR Assistant

64.  On February 25, 2015, the Plaintiff went to Ms. Laura, the Defendant's HR Assistant, and she made her aware that the Security rejected his passport due to his disability.

65. On February 25, 2015, Mr. Laura blamed the Plaintiff for disclosing his disability to the Security.

66.  She made the Plaintiff aware that she has her own disability, but she has never disclosed to the Security.

67.  As a result, Ms. Laura gave the Plaintiff a phone number to contact Mr. Willie Glover the Employee's Union President after the Security used his disability against him.

68. On February 25, 2015, the Plaintiff contacted Mr. Glover.

69. On February 25, 2015, the Plaintiff made Mr. Glover aware that the Security rejected his passport due to his disability.

70. On February 25, 2015, Mr. Glover told the Plaintiff that his medical information is a personal matter, and he should not have disclosed it to the Security. And Mr. Glover advised the Plaintiff not to disclose his medical information in public.

71. Mr. Glover advised the Plaintiff to go to the Security to wait for him.

9

Case Number: 3:20-CV-1184

72. When the Plaintiff returned to the Security to wait for Mr. Glover. Mr. Novak and Mr. Tautem harassed him. He was advised to stay away from the Security building till Mr. Glover comes. but the Plaintiff refused to go away.

73. Then Mr. Novak, and Mr. Tautem pushed the Plaintiff away from of the Security building after he refused to go away.

74. On February 25, 2015, the Plaintiff retuned to the Security with Mr. Glover.

75. In the Security's office, the Plaintiff made Mr. Glover aware that the Security rejected his passport due to his disability.

76. Then the Plaintiff presented his passport to Mr. Tatuem and Mr. Novak, but it still rejected.

77. On February 25, 2015, the Plaintiff made the Security aware that his medical issues have been treated by the doctor.

78. He made the Security aware that his doctor did not recommend any restriction on him about any job, yet his passport was rejected by   Mr. Tautem.

79. On February 25, 2015, the Plaintiff called the Defendant/Mr. Novak **"White Racist"** after his passport was rejected due to his disability.

80. Mr. Glover witnessed when the Defendant rejected the Plaintiff for the second time on February 25, 2015.

81. Mr. Glover witnessed in the Security when the Plaintiff accused the Defendant/Mr. Novak of **"RACISM".**

82. on February 25, 2015, Mr. Glover took the Plaintiff to the HR Office. Mr. Glover complained to Ms. Laura HR Assistant that the Security has refused to accept his passport due to his disability.

83. On February 25, 2015, Then Ms. Laura referred Mr. Glover and the Plaintiff to her boss Mr.  Po, the Program Manager /HR Supervisor.

Case Number: 3:20-CV-1184

84. On February 25, 2015, Mr. Po, Mr. Glover, and the Plaintiff held a brief meeting in the HR Office due to the Defendant's failure to accept his passport.

85. During the meeting, the Plaintiff made a complaint that the Security refused to accept his passport due to his disability.

86. On February 25, 2015, the Plaintiff invited Ms. Joanne to the meeting to explain why she refused to inform him during the job interview that people with disability are not qualified for the position.

87. On February 25, 2015, the Plaintiff turned down invited Ms. Joanne but she did not show up.

88. After the meeting, Mr. Po promised to speak to the Security. He promised to get back to the Plaintiff and Mr. Glover.

89. on February 25, 2015, Mr. Po, Mr. Glover, advised the Plaintiff and Mr. Glover to return to their perspective workplaces.

90. And during this meeting, the Plaintiff shouted more than once in the HR Office that rejecting his passport is RACISM.

91. The same day Mr. Po advised the Plaintiff to calm down.

92. He told the Plaintiff that no one is going to arrest him, and the Plaintiff considered Mr. Po's action as a bullying and a mockery.

93. on February 25, 2015, the Plaintiff felt bad about the Mr. Po's remarkable action.

94. On February 25, 2015, the Plaintiff complained to Mr. Baran about the Security failure to accept his passport due to his disability, no action was taken.

95. On or after February 25, 2015, the Plaintiff requested a reasonable accommodation from Baran, no action was taken.

96. On February 26, 2015, the Plaintiff returned to the Security.

97. Then he presented his passport to Mr. Novak, not action was taken.

Case Number: 3:20-CV-1184

98. On February 26, 2015, Mr. Novak told the Plaintiff that it was not his responsibility to accept his passport.

99. Mr. Novak said that it was a responsibility of Mr. Tautem to accept the Plaintiff's passport.

100. On February 26, 2015, Mr. Novak made the Plaintiff aware that Mr. Tautem is out of the office.

101. Mr. Novak advised the Plaintiff to return to the Security when Mr. Tatuem is back to the Office.

102. However, the Plaintiff argued with Mr. Novak; then he harassed the Plaintiff. He forced him out of the Security building.

103. On February 26, 2015, Plaintiff returned to the Security when Mr. Tatuem came to work. Then he presented his passport to Mr. Tatuem, but it still was rejected.

104. And he also told the Plaintiff that the Defendant would hold a meeting held meeting on March 02, 2015 to determine if his passport would be accepted or not.

105. Also Mr. Tatuem advised the Plaintiff to go back to his work with his Passport, but the Plaintiff refused and argued with him.

106. On February 26, 2015, Mr. Tatuem informed Mr. Wilson that the Plaintiff refused to return work with his passport.

107. Then Mr. Tatuem forced the Plaintiff to leave the Security building. He left with his passport without being accepted by the Security.

108. and on March 04, 2015, the Plaintiff's passport was returned by the Defendant for update after the Security wrote false JCAVS Incident Report on February 26, 2015, that the Plaintiff refused to turn in his passport,

109. He backed date the first day (February 25, 2015) his passport was rejected to the day February 24, 2015 which the Plaintiff came to the Security with no passport.

110. On February 24, 2015 was when the Plaintiff did his fingerprint by Mr. Tatuem.

12

**Case Number:  3:20-CV-1184**

111.  On February 27, 2015, the Plaintiff wrote an appeal letter to the Defendant to accept his passport, regardless of his disability, but not action was taken.

112.  And the copy of the appeal letter was served to Mr. Wilson, Mr. Baran, Mr. Novak, HR Office.

113.  On March 04, 2015, the Security returned the Plaintiff's security clearance application.

114.  Mr. Wilson informed the Plaintiff that his application was returned due to lack of signature.

115.  On March 04, 2015, Mr. Wilson made Mr. Daniel aware that the Plaintiff needs to sign his clearance application.

116.  Mr. Wilson advised Mr. Daniel to allow the Plaintiff his computer to print out the application signature portion.

117.  On March 04, 2015, the Plaintiff logged in Mr. Daniel's computer.

118.  As Mr. Daniel was there, the Plaintiff went through all the information on his application submitted on February 23, 2015.

119.  On March 04, 2015, when the Plaintiff tried to proofread his application.  He was confronted and bullied by Mr. Daniel.

120.  On March 04, 2015, the Plaintiff's application has no room to put his signature. He printed out the signature page as instructed by the Security.

121.  He signed his application after printed out and handed it over to Mr. Wilson.

122.  On March 04, 2015, Mr. Wilson submitted his signed document to the Security.

123.  From February 25, 2015 to March 10, 2015, the Plaintiff engaged in a protected activity.

124.  The Plaintiff made calls and sent emails to the Defendant include Mr. Tatuem, Wilson, Baran, Novak, Ms. Joanne, many.

**Case Number: 3:20-CV-1184**

125. The Plaintiff advised the Security to accept his passport, and not to use his disability against him, but no action was taken.

126. On March 11, 2015, the Plaintiff was placed on an administrative leave by the Defendant.

127. On March 11, 2015, he made Mr. Gaines Troyes EEO Specialist aware that the Defendant rejected his passport due to his disability.

128. The Plaintiff made Mr. Troyes aware that he has been placed on administrative leave due to his disability and protected activity.

129. From March 11, 2015 to March 17, 2015, the Plaintiff engaged in a protected activity by calls and emails regarding the Security failure to accept his passport due to his disability.

130. On March 16, 2015, Mr. Wilson notified the Plaintiff by phone that the Security wants his passport.

131. On March 16-17, 2015, the Plaintiff thanked the Defendant, Mr. Wilson, Mr. Tatuem, Mr. Novak, and others by calls and emails for accepting his passport after being rejected on February 25, 2015 due to his disability.

132. On March 17, 2015, Mr. Tatuem and his Security's co-workers accepted the Plaintiff's passport at the Security office in the Defendant's HR building where the Plaintiff renounced his dual citizenship.

133. On March 17, 2015, the Plaintiff had a meeting with the EEO Specialist Mr. Troyes in the EEO Office in the same Defendant's HR building.

134. On March 17, 2015, the Plaintiff was harassed and bullied by Mr. Tatuem and other security on his attempt to go to the EEO office to make complaints about the Defendant's unfair treatments.

135. On March 17, 2015, the Plaintiff had a car accident on his way to surrender his passport to the Security.

14

Case Number:  3:20-CV-1184

136.  On March 17, 2015, the Plaintiff called   the EEO Specialist Mr. Troyes by phone. He him that Mr. Tatuem and his co-workers has stopped he is coming into the EEO Office to make his complaints.

137.  On March 17, 2015, Mr. Troyes came out of his office and took the Plaintiff to the the EEO office.

138.  On March 17, 2015, Mr. Tatuem and Security Co-workers were aware of his protected activity in the EEO Office.

139.  On March or after March 25, 2015, the Plaintiff was admitted to the University Florida Teaching Hospital (UF) due to the accident.

140.  From March 17, 2018 to April 17, the plaintiff engaged in a protected activity by calls and emails, and the Defendant is aware of his protected activity.

141.  On April 17, 2015, the Plaintiff got fired on his job, then on June 2015, the Plaintiff filed his EEO Complaint.

142.  On April 17, 2015, the Plaintiff learned from his termination letter that he did not submit his passport on a timely manner.

143.  On April 17, 2015, the Plaintiff learned that he advised on March 04, 2015 to correct some grammatical errors on his clearance application.

144.  On April 17, 2015, the Plaintiff learned that he advised on March 04, 2015 not to make any correction on his application beyond "grammatical errors."

145.   The Plaintiff's termination letter states that the plaintiff finally submitted his passport on March 11, 2015.

146.  In May 2015, the Plaintiff became homeless. He was homeless from May 2015 till November 2018.

147.  In May 2015, the wrote a complaint letter to the Office of Personnel Management (OPM) regarding his termination and clearance issues that he had with the defendant.

15

Case Number: 3:20-CV-1184

148.  On May 28, 2015, the OPM replied his letter and states that the Plaintiff's letter was received on May 1, 2015.

149.   The OPM states that the Department of Defense, Consolidated Adjudication Facility (DOD CAF) submitted his clearance paperwork to their office to initiate an investigation on March 19, 2015.

150.  Also, they state that the paper contains insufficient information to initiate an investigation, as a result, his clearance application was made unacceptable and returned to the Defendant on April 13, 2015.

151.   The Security states an incident report was written to the DOD CAF on February 26, 2015 that the Plaintiff refused to turn in his passport.

152.  The security states that the DOD CAF advised them not to accept the Plaintiff's passport after February 26, 2016 incident report was written.

153.  Mr. Novak states that he informed the Plaintiff that the DOD CAF said that accepting his passport on March 17, 2015 would not make any changes in their initial decision that his passport would no longer be accepted.

154.  On or after June 2015, the Plaintiff wanted the Employee's Union President  to work with him on EEO/ termination issues, but Mr. Weiss Mitchel lied him that he is not qualified for the Employee's Union to represent him in the EEO Complaint.

155.  On or after June 2015, requested reference letters from the Defendant, no action took, rather Mr. Mitchel made him aware that he is not qualified to receive reference letters.

In November 2015, the Plaintiff was admitted to the Mayo Clinic due to the brain injury he had from the car accident on March 17, 2015.  He was under Pre-surgical procedures to do his brain surgery, but he lost his medical insurance.

**Case Number:  3:20-CV-1184**

156.   In June 2016, the Plaintiff had a car accident with his Bike in Jacksonville Florida downtown that resulted a lot of injuries.  And he was taken to the Emergency at the University of Florida Teaching Hospital Jacksonville, UF Hospital.

157.   In June 2016, the Plaintiff was given a traffic violation ticket by the Sherriff. And he paid fine to court for traffic violation.

158.   The Plaintiff states that the Defendant's proffered reasons for firing him is false.

159.    The Plaintiff states that he was fired for his opposition protected activity on February 25, 2015 (when he called Mr. Novak a **Racist** and others after his passport was not accepted)

160.   Mr. P.O confirmed that the Plaintiff's passport was rejected on February 25, 2015 due to his disability.

161.   Ms. Laura Durrett confirmed that the Plaintiff's passport was rejected on February 25, 2015 due to his disability.

162.   Ms. Francine M. Juhlin, the Security Assistant confirmed that the Plaintiff on February 25, 2015 proposed to file a lawsuit against the Defendant.

163.   Ms. Joanne confirmed that the Plaintiff's passport was rejected on February 25, 2015 due to his disability.

164.   Mr. Glover confirmed that the Plaintiff's passport was rejected on February 25, 2015 due to his disability.

165.   Mr. Wilson provided false testimony during his investigation.

166.   Mr. Novak provided false testimony during his investigation.

167.   Mr. Tatuem provided false testimony during his investigation.

168.   Mr. Baran provided false testimony during his investigation.

17

## Case Number: 3:20-CV-1184

169. The Plaintiff's father committed suicide in June 2015 after the he became homeless.

170.  The Plaintiff notified the Defendant and Mr. Stanley Baran about his father's death.

171. The defendant provided false statements during EEOC 2015 investigation.

172. The security office, Mr. Novak, Mr. Wilson, Mr. Baran, Ms. Joanne, Ms. Durrette and other HR employees received a couple emails from the Plaintiff about unfair treatment he received from the security.

173. Between February 25 and April 17, 2015, The Plaintiff emailed some external federal agencies such as OPM office, the office of the United President, the EEOC Headquarters DC regarding how the Defendant used his disability against them. Mr. Baran, Wilson, Tatuem, Novak, many were copied to the emails.

### SUMMARY

174. The Plaintiff received an excepted appointment to the position of Electrical Engineer, GS-0855-09, at the Fleet Readiness Center Southeast (FRCSE) on February 9, 2015. On April 17, 2015, Stanley Baran, Avionics Systems Engineering Department Head, terminated his employment during the trial period.

175. Since the enactment of Title VII of the Civil Rights Act, four theories of employment discrimination have emerged under U.S. law: disparate treatment, disparate impact, harassment, and retaliation.

### CAUSES OF ACTION

### COUNT 1

### Disparate Treatment

Title VII of Civil Rights Act of 1964 (Title VII)- prohibits employment discrimination based upon race, color, religion, sex/gender, or national origin- Enforced by EEOC/FCHR.

18

Case Number:  3:20-CV-1184

Americans with Disabilities Act (ADA)- prohibits discrimination against qualified individuals with an actual or perceived disability.

Individual Cases of Disparate Treatment: St Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas v. Green, 411 U.S. 792 (1973).

The person the plaintiff identifies as her comparator must be similarly situated "in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997) In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir.1994)

176.  The Plaintiff is an individual with disability.  He is only black Nigerian among his all non-disabled similarly situated comparators interns.

177.   One of the Plaintiff's similarly situated comparators intern is an Asian that his foreign passport was collected by the Defendant's Security in February 2015, but the Plaintiff's foreign passport was rejected.

178.   The Asian employee was issued an interim security clearance by the Defendant in February 2015, but the Plaintiff's interim was denied.

179.   The Plaintiff's passport was brought to the defendant's Security Personnel Mr. Novak and Mr. Tautem in February 2015 on three (3) separate days (February 25-26-27), but it was rejected due to his disability.

180.   The Plaintiff was denied reference letters by the Defendant on more than one occasion from after he was terminated on April 17, 2015.

181.   The Plaintiff was excluded from workplace meetings after his protected activity in February 2015.

**Case Number: 3:20-CV-1184**

182.  Before the Plaintiff's protected activity on February 24-25, Mr. Wilson asked him about his age and marital status.

183.  The Plaintiff complained about perceived disability from February 25, 2015 through April 17, 2015.

184.  The Plaintiff requested a reasonable accommodation by oral from February 25, 2015 through April 17, 2015, no action took.

185.  In February 2015, Mr. Wilson informed Mr. Baran about the Plaintiff has disability after the he disclosed his disability to Mr. Wilson.  And the Plaintiff was treated differently.

186.  As a direct result of disparate treatment by the Defendant, the Plaintiff has suffered damages include the loss of wages and benefit, mental anguish and emotional distress, and loss of enjoyment.

### DEMAND FOR RELIEF

WHEREFORE, the Plaintiff respectfully demand judgment against the Defendant in the official capacities as the Defendant' former employee, for the following damages:

a.  Loss of wages and Benefits.

b.  Compensatory damages for mental and emotional distress.

c.  Prejudgment interest.

d.  Punitive damages

e.  Placement into the position he would have held had no retaliation occurred.

f.  Any other relief the court deems just and proper.

### COUNT 2

### Reprisal/Retaliation

Section 704(a) of Title VII prohibits discrimination against individuals because they have filed a Title VII charge, have participated in a Title VII investigation, or have otherwise opposed Title VII discrimination.  Commission Decision No. 72-1883, CCH EEOC Decisions (1973) ¶ 6375.

Case Number:  3:20-CV-1184

187.  Since Complainant alleges reprisal, a prima facie case analysis is necessary to determine critical threshold issues. To establish a prima facie case based on reprisal, Complainant must show that: (1) he engaged in prior protected activity; (2) the agency official who took the adverse employment action was aware of the protected activity; (3) he was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment.

188.  Complainant may establish prior EEO activity by participating at any stage of the EEO process or opposing unlawful discriminatory conduct. See, generally, Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. U.S. Postal Service, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24, 1986) (representative).

        a.                          **Protected Activity**

The Plaintiff engaged in a protected activity from February 2015 through April 2015 by opposing the discrimination.

189.  The Plaintiff states that Mr. Stanley Baran and West Wilson became aware of his involvement in protected activity in February 2015.

190.  On February 25, 2015, the Plaintiff threated to file EEO complaint against the defendant on February 25, 2015 after his passport was rejected.

191.  The Plaintiff informed the Security's secretary on February 25, 2015 that he would file a lawsuit against the defendant's Security if they refused to accept his passport after he disclosed his disability.

21

**Case Number: 3:20-CV-1184**

192.   The Plaintiff made complaints on March 11, 2015 to the EEO Specialist Mr. Tyrone that the defendant's Security Personnel Mr. Novak and Mr. Tautem rejected his passport on three separate days in February 2015 due to his disability.

193.   On February 25, 2015, the Plaintiff asserts Ronald Novak and Mr. Tatuem also became aware of his protected EEO activity after his passport was rejected after he disclosed his disability.

194.   On February 25, 2015, the Plaintiff confronted the Defendant's HR Specialist Ms. Joanne and he made him aware that Mr. Novak and Mr. Tatuem said that she informed him(plaintiff) during the job interview that people with disability are not qualified to work in his job position (Electrical Engineer).

195.   On February 25, 2015, the Plaintiff made the defendant's security secretary aware that her name would not be included on the lawsuit that he proposed to file against the Defendant and Personnel Security regarding not accepted his passport due to his disability.

196.   On February 25, 2015, the Plaintiff said that Mr. Glover witnessed the above-mentioned interactions of his passport issues with Mr. Novak, and Mr. Tatuem.

197.   On February 25, 2015, the Plaintiff confronted the defendant's Security Personnel after they reversed the minutes and lied that the Plaintiff refused to turn in his passport.

198.   The Plaintiff complained to Ms. Laura on February 25, 2015 that the defendant's Security Personnel used his disability against him.

199.   On February 25, 2015, the Plaintiff complained to the Employee's Union President Mr. Glover that the Defendant's Security has used his disability against me after it (disability) was disclosed to them.

200.   Mr. Glover and the Plaintiff made complaint to the Defendant's HR Program Manager Mr. Po on February 25, 2015 that the Defendant's security Personnel rejected his passport due to his disability.

**Case Number: 3:20-CV-1184**

201.  The Plaintiff confronted Mr. Po during a meeting on February 25, 2015 with the Plaintiff and Mr. Glover regarding the Defendant's Security Personnel failure to accept his passport due to his disability.

202.  On February 25, 2-019 the Plaintiff confronted Ms. Joanne by phone to appear in the meeting that conducted by Mr. Po to explain why she rejected to inform him during his job interview that people with disability are not qualified for his Electrical Engineer Position.

203.  The Plaintiff on March 17, 2015 made complaints in the EEOC Office based on unfair treatment ad rejection of his passport by the Defendant's Personnel Security.

204.  Between March 01, 2015 and April 17, 2017, the Plaintiff complained to the EEO Washington DC, Office of the US President, many about the rejection of his passport due to his disability.

205.  The Plaintiff requested reference letters from the Defendant, Mr. Wilson, Baran, Weiss, Novak and Tatuem, but no action was taken.

**The Awareness About Protected Activity**

206.   The Plaintiff requested a reasonable accommodation.

207.  The Plaintiff asserts that he confronted Mr. Wilson on February 24, 2015 after he made him aware that people with disability are not allowed to work in the US Navy.

208.  The Plaintiff asserts that he confronted Mr. Wilson on February 24, 2015 after he made him aware that people with disability are not allowed to work in the US Navy.

209.  The Plaintiff confronted Mr. Novak on February 25, 2015 after his passport was rejected, and he made Mr. Novak aware that he (Novak) is a **"White Racist."**

210.  The Plaintiff made complaints on March 17, 2015 to the EEO Specialist Mr. Tyrone when Mr. Tatuem attempted to prevent him going to the EEO office.

23

**Case Number: 3:20-CV-1184**

211.   The Plaintiff reported to Mr. Baran and Mr. Wilson on February 25, 2015 that the defendant's security used his disability against me, and they refused to accept his passport.

212.   The Plaintiff made Mr. Novak and Mr. Tatuem aware on February 25, 2015 that it would be against the EEOC rules if his passport is rejected due to his disability.

213.   The Plaintiff confronted Mr. Novak on February 25, 2015 after his passport was rejected.

214.   The Plaintiff on February 25, 2015 felt frustrated and called Mr. Novak is a "White Racist" after his passport was rejected.

215.   On February 25, 2015, The Plaintiff made Mr. Novak, and Mr. Tatuem aware that his passport was rejected based on race and disability.

216.   The Plaintiff confronted the defendant's Security Personnel Mr. Novak and Mr. Tatuem on February 25, 2015 to put in writing as they said that people with disability are not allowed to obtain any security clearance in the US Navy.

217.   The Plaintiff confronted Mr. Novak on February 27, 2015 after his passport was rejected again by the Defendant's security.

218.   From 25, 2015 to March 11, 2015, the Plaintiff confronted Mr. Wilson and Mr. Baran in their offices. after they did nothing about his complaint against the defendant's security regarding his passport that was rejected in February 2015 after he disclosed his disability.

219.   The Plaintiff confronted Mr. Novak and Mr. Tautem   on February 26, 2015 after his passport was rejected again.

220.   The Plaintiff confronted the defendant's Security Personnel Mr. Novak and Mr. Tatuem on February 25, 2015 to put in writing as they (Novak, Tatuem) said that people with disability are not allowed to work in the US Navy,

24

**Case Number: 3:20-CV-1184**

221.  The Plaintiff confronted the defendant's Security Personnel on February 25, 2015 and he advised them to put in writing that people with disability as they said are not allowed to obtain security clearance, no change was made.

222.  From February 25, 2015 to April 17, 2015, the Plaintiff confronted the Defendant, Mr. Novak, Tatuem, Wilson, Baran, HR Management, many by phone/email/in person when he made them aware about unfair treatments he received from the security and others.

**Adverse Action**

223.  126. The Plaintiff was placed on administrative on March 11, 2015 and he was terminated on April 17, 2015 after his projected activity that started from February 24, 2015 till April 17, 2015.

224.                          **Casual Connection**

225.  The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001).

**Temporary Proximity and Suspicious Timing**

• Court: Suspicious timing was enough to send the case to trial. Daoud v. Avamere Staffing, LLC, 336 F. Supp. 2d 1129 (D. Or. 2004). The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798-99 (11th Cir. 2000)

226.  The Plaintiff's protected activity started on February 24, 2015 when he confronted Mr. Wilson when after being told that people with disability are not allowed to obtained security and work in the US Navy.

227.  Within the short period March 11, 2015, the Plaintiff was placed on an administrative leave; and he got fired on April 17, 2015 after his protected activities from February 24, 2015 to April 17, 2015.

Case Number: 3:20-CV-1184

228.   The Plaintiff believes that there is a suspicious timing between his protected activity, and the Defendant's adverse action.

### Due Process Violation

229.   This procedure is designed for the federal agency to take adverse job actions against federal employees that the agencies believe has violated the workplace rules.

230.   However, the Plaintiff believes that even if it's true that the Plaintiff violated the workplace rule, the Defendant should follow a due process to terminate his employment.

231.   In 2015, "Subject to § 315.803(b), when an agency proposes to terminate an employee serving a probationary or trial period for reasons based in whole or in part on conditions arising before his appointment, the employee is entitled to the following".

The Plaintiff is entitled to an advance written notice stating the reasons, specially and in details, for the proposed action, and the Plaintiff is entitled is entitled to a reasonable time for filing a written answer to the notice of proposed adverse action and for furnishing affidavits in support of his answer, and  the Defendant did not provided any notice of proposed adverse action , but  the Defendant went ahead   fired the Plaintiff without going through due process

232.   As a direct result of unlawful reprisal /retaliation by the Defendant, the Plaintiff has suffered damages include the loss of wages and benefit, mental anguish and emotional distress, and loss of enjoyment.

### DEMAND FOR RELIEF

WHEREFORE, the Plaintiff respectfully demand judgment against the Defendant in the official capacities as the Defendant' former employee, for the following damages:

g.  Loss of wages and Benefits.

h.  Compensatory damages for mental and emotional distress.

i.  Prejudgment interest.

j.  Punitive damages

k.  Placement into the position he would have held had no retaliation occurred.

l.  Any other relief the court deems just and proper.

## COUNT 3

### Harassment/Hostile Work Environment

An employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee"Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998)

233.  The Plaintiff was subjected to obvious negative criticism about his disability, race, and national origin.

234.  Mr. Baran and Mr. Wilson constantly reminded of taking his medications.

235.  The Defendant's spread of gossip and lies that the Plaintiff refused to turn in his passport on a timely manner to the Security Mr. Novak and Mr. Tatuem.

236.  The Plaintiff being singled out by not being invited to the Defendant's meetings after his protected activity.

237.  The Plaintiff suffered the threats of retaliation on March 11, 2015 by Mr. Baran and the defendant's security when he was forced to turn in his identification card to the security. He said the same day (March 11, 2015)   was being consistently humiliated by the defendant in front of other employees for no apparent reason.

**Case Number:  3:20-CV-1184**

238.  On February 25-26, 2015, the Plaintiff was threatened by Mr. Mr. Novak and Mr. Tatuem to he leaves the Security building with his passport.

239.  The Plaintiff was threatened on March 17, 2015 by Mr. Tautem and his security co-workers at the security entrance when he went to make a complaint to the EEO Office.

240.  Mr. Novak and Mr. Tautem threatened the Plaintiff in February 2015 to get outside the Sunday building with his passport.

241.  In February 2015, Mr. Novak and Mr. Tatuem warned the Plaintiff does not bring his passport to the Security without the Security's Permission.

242.   On February 26, 2015, Mr. Wilson threatened the Plaintiff by phone to leave the security's office with his passport.

243.  From February 25, 202 till March 11, 2015, Mr. Baran and Mr. Wilson kept reminding the Plaintiff about taking his medications.

244.   On March 11, 2015, he suffered some threats of retaliation in the hands of Mr. Baran and the defendant's security when he was forced to hand over his employment identification card to the security.

245.  The Plaintiff perceived harassment during the day of his administrative leave when Mr. Baran and security threatened him in presence of his co-workers that he should park all his belongings from his(plaintiff) office and leave the Defendant's premise.

246.  On March 11, 2015, Mr. Baran and security bullied the Plaintiff to hand in his Identification Card to the Security.

247.   Mr. Novak bullied the Plaintiff on February 25, 2015 after he called Racism for rejecting his passport due to his disability.

28

**Case Number: 3:20-CV-1184**

248.  As a direct result of unlawful reprisal /retaliation by the Defendant, the Plaintiff has suffered

damages include the loss of wages and benefit, mental anguish and emotional distress, and loss of

enjoyment.

### DEMAND FOR RELIEF

WHEREFORE, the Plaintiff respectfully demand judgment against the Defendant in the official

capacities as the Defendant' former employee, for the following damages:

a.   Loss of wages and Benefits.

b.   Compensatory damages for mental and emotional distress.

c.   Prejudgment interest.

d.   Punitive damages

e.   Placement into the position he would have held had no retaliation occurred.

f.   Any other relief the court deems just and proper.

### COUNT 4

### Pretextual Allegation Against the Defendant

a.        **False Claims in Termination Letter**

Third Circuit Court of Appeals' recent decision in Cullen v. Select Medical Corp., No. 18-3611 (3rd

Cir. August 22, 2019). The plaintiff in that case, Frederick Cullen, was fired by his employer, Select

Medical Corporation, in early 2016 following his use of an extended med Hardy v. S.F. Phosphates

Ltd. Co., 185 F.3d 1076, 1080 (10th Cir. 1999). Pretext may include, among other things, evidence

of prior treatment of plaintiff, disturbing procedural irregularities and use of subjective criteria.

Simms v. Okla. ex rel Dept. of Mental Health, 165 F.3d 1321, 1328 (10th Cir. 1999).ical leave to

recover from heart surgery.

Case Number:  3:20-CV-1184

249.  The Plaintiff stated that the Defendant made a false statement that his passport was not

submitted on a timely manager when needed by the Personnel Security. He said that he provided

the passport to the Personnel Security Office on three separate days (February 25, February 26 and

February 27/March 02, 2015), but it was not rejected by Mr. James Tatuem and Ronald Novak due

to his disability.

250.  The Plaintiff further alleges Mr. Baran made false statements in the Termination Notice regarding

his e-QIP. For examples, the Defendant lied that the Plaintiff was told to correct grammatical errors

and (2) that he was not told to make any further changes to the application, other than to correct

grammatical errors, but the Plaintiff states that he was not told to make any future changes.  The

Plaintiff states that the Defendant said on March 04, 2015 that the only reason his application was

returned is because he did not sign it.

251.  The Plaintiff he adds he only became aware of these allegations regarding his e-QIP on April 17,

2015 he received the Termination Notice.

252.  Mr. Baran lied that on the termination that the Plaintiff relinquished his Nigerian passport on

March 11, 2015, whereas it was on March 17, 2015 that the Security collected his passport.


253.  **False Claims and Inaccurate Statements In EEOC Position Statement**

254.  The Plaintiff believes that Mr. Wilson, Baran, Novak, and Tatuem made false statements in the

EEO Investigation report

b.              **Wilson's Inaccurate Report**

255.  Mr. The Plaintiff alleges that he requested reasonable accommodation and Mr. Wilson accepted

his medical accommodation document, but no action was taken, but during in the investigation, Mr.

**Case Number:  3:20-CV-1184**

Wilson denied that the Plaintiff did not request a reasonable accommodation and that the Plaintiff did not provide his medical/rehabilitation document to him.

256.   The Plaintiff asserts that in February 2015, Mr. Wilson questioned him of his age and marital status during his (the Plaintiff) tenure with the Defendant's FRCSE, but Mr. Wilson during the EEOC investigation, he denied both during the EEOC investigation.

257.   The Plaintiff asserts that on February 24, 2015 Mr. Wilson told him in his (Wilson) office that people with disability are not allowed to work in the US Navy and not allowed to obtain security clearance, but he denied both during the EEOC investigation.

258.   On February 24, 2015, the Plaintiff informed Mr. Wilson about his disability, but Mr. Wilson denied that he did recall the exact date that the Plaintiff made him aware of his disability.

259.   The Plaintiff texted Mr. Wilson on February 25, 2015 (the first day his passport was rejected) that the Jacksonville Florida Navy (the Defendant) denied him of his CAC Card today and as a result he voluntarily disclosed his confidential medical information to the Security, but during EEOC investigation, Mr. Wilson intentionally testified incorrectly that it was on February 24, 2015 that the Plaintiff texted him that the defendant's Security has used his disability against him.

260.   The Plaintiff asserts that Mr. Wilson talked to the Security department Mr. James Tatum, Assistant Security Manager on February 25, 2015 to make him aware of the contents of the text messages that he is receiving from the Plaintiff; but during investigation, Mr. Wilson lied that he talked to the Security department Mr. James Tatum, Assistant Security Manager on February 24, 2015.

261.   The Plaintiff states that Mr. Wilson made false statements that Mr. Tatuem called to advise him that the Plaintiff was in the Security but had become confrontational and was refusing to surrender his passport.

31

**Case Number: 3:20-CV-1184**

262. The Plaintiff states that Mr. Wilson made false statements that he also states that he spoke to the Plaintiff when he (the Plaintiff) returned to the office, he said that the Plaintiff spoke to his dad and he said that he had spoken to his father was a bit upset about the idea of him (the Plaintiff) relinquishing the passport.

263. Mr. Wilson denied that the Plaintiff advised him that he had tried to turn in his passport, but the Security had refused to accept it.

264. Between March 01 and March 17, 2015, the Plaintiff contacted Mr. Wilson by phone and emails and made him aware that the security has rejected his passport due to his disability, but Mr. Wilson later denied about it.

265. On February 24-25, 2015, Mr. Wilson first became aware about the Plaintiff's engagement in EEO protected "opposition" activity in his office and security, but Mr. Wilson denied and said that he became aware of his protected activity after his termination.

c.                    **Baran's Inaccurate Report**

266. The Plaintiff asserts he had discussion with the Mr. Baran on February 25, 2015 regarding his passport being rejected due to his disability, he denied that he did have such discussion with the Plaintiff.

267. Mr. Stanley Baran asserts that he made the decision to terminate the Plaintiff for failure to demonstrate fitness for continued federal employment due to his failure to follow workplace rules and regulations by refusing to relinquish his passport when requested which required an Incident Report to be submitted to the Department of Defense Central Adjudication Facility (DODCAF), but according the Plaintiff , his passport was relinquished on February 25, 2015( first day ), February 26, 2015( second day) and February 27/or March 02, 2015( third day) , but it was rejected by Mr. Novak and Mr. Tautem due to his disability.

32

**Case Number:  3:20-CV-1184**

268.   The Plaintiff asserts that he provides his medical documents to Mr. Baran on or after February 25, 2015, based on his reasonable accommodation request, but during investigation, Mr. Baran denied that he received accommodation request from the Plaintiff.

269.   The Plaintiff asserts that the reason he got fired is due to his opposition to discrimination from February 24, 2015 to April 17, 2015, but Mr. Baran lied and testified that the only reason the Plaintiff was terminated was due to his security clearance,

                  d.                    **Novak's Inaccurate Report**

270.   The Plaintiff states that Mr. Novak made incorrect statements that the Plaintiff would not turn in his passport the first two times (24 February 2015, first time) and (25 February 2015) to the security team requested.

271.   Mr. Novak made an incorrect statement that when the Plaintiff eventually decided to turn in his passport, it was initially rejected, per DODCAF guidance, not due to his EEO activity.

272.   . Mr. Novak makes an incorrect statement that the first day the Plaintiff brought his passport to the Defendant was on February 24, 2015, but the Plaintiff states that it was on February 25, 2015 when he brought Mr. Glover to the Security that the Security has used disability against. The same day (February 25, 2015) was when the Plaintiff complained to Ms. Laura. Ms.  Joanne and Mr. Po that the Security has rejected his passport due to his disability.

273.   Again Mr.  Novak makes an incorrect statement that his second day the Plaintiff brought his passport to the Defendant was on February 25, 2015, but the Plaintiff states that February 26, 2015 was a second day he brough his passport to the security.

Case Number: 3:20-CV-1184

274. The Plaintiff states that Mr. Novak made a false statement that Mr. Tatuem, briefed the Plaintiff on February 25, 2015, and showed him in the SECNAVINST 5510.30 where he was required to turn in his passport, and the Plaintiff refused to turn in his passport, but the Plaintiff did not refuse to turn in his passport to the security.

275. The Plaintiff states that his clearance application was returned on March 04, 2015 due to lack of his signature, but Mr. Novak made an incorrect statement that upon Mr. Tatuem reviewed the Plaintiff's clearance application and he returned the application to the Plaintiff on March 04, 2015, to correct some grammatical errors such as spelling of cities and acronyms being used. And however, the Plaintiff states that he learned on April 17, 2015 on his termination letter that the Security advised him to correct grammatical errors on his application.

276. The Plaintiff asserts that Mr. Novak made an incorrect statement that he had the Plaintiff's passport in his hand but did not attempt to turn the passport in, but the Plaintiff states that he went to the Security from February 25-27/or March 02. 2015, no action was taken.

277. The Plaintiff asserts that Mr. Novak made a false statement that the Plaintiff held his passport March 02, 2015 at his hand and attempted to turn it, but the Plaintiff states that the Security refused to accept his passport when he tried to turn it in.

278. The Plaintiff states that Mr. Novak made incorrect statements that the decision regarding not able to accept his passport was not based on his protected classes race, national origin, disability, or others, but the Plaintiff states that the decision was due to his protected classes, and the protected activity from February from February 25, 2015 to March 17, 2015.

34

Case Number: 3:20-CV-1184

279. The Plaintiff asserts that Mr. Novak made an inaccurate statement on the report that he referred

him back to Labor Employee Relations on 25 February 2015, but the Plaintiff states that he went to

HR Office by himself after his passport was rejected on 25 February 2015 due to his disability.

280. The Plaintiff states that Mr. Novak made incorrect statement on the report that he never said

that people disabilities are not allowed to work in the U.S. Military.

281. The Plaintiff states that Mr. Novak made an incorrect statement that he made the decision that

the Plaintiff was not qualified to obtain an interim security clearance on February 25, 2015, acting

for the Commanding Officer, but the Plaintiff states that Mr. Novak's decision was made due to his

protected activity from February 25,2015 to April 17, 2015.

282. The Plaintiff asserts that the Security wrote a false incident report on February 26, 2015 that

submitted to the DODCAF that the Plaintiff refused to turn in his passport on February 24-25, 2015.

e.          Tautem's Inaccurate Report

283. The Plaintiff asserts that Mr. Tatuem made some inconsistent statements on the report. 1. He

said that he became aware of Plaintiff 's medical condition upon his initial review of his security

application. 2. Later He stated the Plaintiff introduced his disability to security during the time that

he was supposed to be turning in his passport. 3. And also, he stated that he had not reviewed the

Plaintiff's security application before the Plaintiff started the discussion about his disability, 4.

Finally he stated that once the Plaintiff returned to the security office to surrender passport, at this

time the Plaintiff introduced the talk of his disability.

284. The Plaintiff states that Mr. Tatuem stated that when he called his father in Nigeria, and he asked

the Plaintiff if everything was okay and the Plaintiff stated that let us proceed, I am dead to him (his

father) now, but the Plaintiff states that he did never say that he is dead to his father.

35

**Case Number: 3:20-CV-1184**

285.   The Plaintiff asserts that Mr. Tatuem makes a false statement that his(plaintiff) father said that if

he gives away his passport, and chooses America over Nigeria, he is no longer his son.

286.   The Plaintiff states that Mr. Tatuem made a false statement that he did not have his passport with

him on February 23, 2015, but the Plaintiff states that he did not go to security on February 23,

2015.

287.   The Plaintiff states that Mr. Tatuem makes an incorrect statement that the Plaintiff says that he

would be the Security on 24 February 2015 to turn his passport in. But the Plaintiff states that he

told Mr. Tatuem that he would be in Security on February 25, 2015 to turn in his passport.

288.   The Plaintiff asserts that Mr. Tatuem made incorrect statement that Mr. Wilson asked the Plaintiff

was there a problem and if he understood what he was supposed to be doing regarding his passport,

and the Plaintiff stated that he did, and the call was ended with Mr. Wilson, but the Plaintiff states

that there was never a time he was asked such a question by Mr., Wilson.

289.   The Plaintiff asserts that Mr. Tatuem wrote fake minutes on February 25, 2015 that he refused to

turn his passport in to the Security.

290.   The Plaintiff asserts The Defendant wrote a false Incident Report on February 26, 2015 to be

submitted to the Department of Defense Central Adjudication Facility (DODCAF) that the Plaintiff

refused to relinquish his passport on February 24, 2015 and February 25, 2015 after being

requested, but the Plaintiff said that the Security rejected his passport throughout February 2015

he brought it to them.

291.   Mr. Tatuem make an inaccurate statement and said that he reviewed the Plaintiff's application

and found that he had not included addresses for several of the references he had provided, so he

returned the document to him asking to add that information, But the Plaintiff states that he was

**Case Number: 3:20-CV-1184**

told on March 04, 2015 by the Defendant that he only reasons his application returned was because the application was not signed.

292.   As a direct result of unlawful reprisal /retaliation by the Defendant, the Plaintiff has suffered damages include the loss of wages and benefit, mental anguish and emotional distress, and loss of enjoyment.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiff respectfully demand judgment against the Defendant in the official capacities as the Defendant' former employee, for the following damages:

    a.   Loss of wages and Benefits.

    b.   Compensatory damages for mental and emotional distress.

    c.   Prejudgment interest.

    d.   Placement into the position you would have held had no retaliation occurred.

    e.   Punitive damages

    f.   Any other relief the court deems just and proper.

293.                              **Corrective Actions.**

  a.   Placement into the position you would have held had no retaliation occurred.

  b.   Discipline and terminate of all defendant's employees who are engaged in the unlawful retaliation and disability discrimination.

  c.   Preventive training for the Defendant's managers and supervisors.

  d.   Removal of misconduct history from the Plaintiff's records.

  e.   A comprehensive education program for the Defendant, HR, and management to identify problems and improve the Defendant's climate.

Case Number: 3:20-CV-1184

f.   Increase the Defendant's monitoring of areas where retaliation, and disability discrimination occurred.

g.  Reaffirm the Defendant's policy regarding retaliation, disability discrimination, and others.

**DEMANAD FOR JURY TRIAL**

The Plaintiff, Charles Ibeh, demands trial by jury on all issues.

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Date:  March 23, 2021

Respectfully Submitted

/s/ Charles Ibeh

22026 Oxford Court C-8

Lexington Park, MD20653

**VERIFICATION**

**Personally, appeared by the undersigned, the Plaintiff, Charles Ibeh, who being first duly sworn, disposes and says the allegation in this Verified Complaint and Demand For Jury Trial consisting of paragraph 1 through 38, a Demand for Relief and Demand for Jury Trial, are true and correct to the best of his knowledge, information and belief.**

**Charles Ibeh**